## Louisville Tobacco Warehouse Company v. Calvert, et al.

(Decided May 28, 1918.)

### Appeal from Carroll Circuit Court.

1. Appeal and Error—Cross-Appeal—Motion to Obtain—Time.— Under section 755, Civil Code, a cross-appeal is granted as a matter of right to an appellee, but only upon motion therefor;

and the order granting the cross-appeal must be entered upon the records of the Court of Appeals before final submission.

2. Appeal and Error—Review—Cross-Appeal.—A judgment dismissing appellee's counter-claim for damages for alleged negligence can not be reviewed, no cross-appeal having been taken.

3. Homestead—Abandonment—Intent.—The intent to abandon a homestead will not be conclusively presumed from the fact that the owner voted in a precinct other than that in which the homestead is located, nor from the fact of protracted absence therefrom, these being merely circumstances to be considered in connection with other proof in determining the question of abandonment.

4. Homestead—Liabilities Enforcible Against.—Where the owner of a homestead sells it and with the proceeds buys another, the right to a homestead in the second tract is good against intervening creditors, if the first homestead had not theretofore been abandoned.

5. Homestead—Abandonment — Evidence — Separate Property of Wife.—Facts held insufficient to show abandonment of a homestead, where the owner was absent therefrom for about twelve years; and sufficient to show that the excess in the purchase price of a homestead in a second tract over the proceeds of sale of the former homestead was represented by investment of the separate property of the wife.

WINSLOW & HOWE for appellant.

J. A. DONALDSON & SONS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant, Louisville Tobacco Warehouse Company, beginning January 29, 1912, advanced to E. T. Calvert and R. L. Vallandingham, partners doing business under the firm name of E. T. Calvert & Company, various sums of money with which to purchase tobacco, to be prized, shipped to, and sold at, plaintiff's warehouse in Louisville, upon which advancements the firm agreed to pay interest. The tobacco was not all sold until after the death of Vallandingham in 1904, and when it was sold and the proceeds credited upon the account of Calvert & Company for advancements, it left them indebted to the Warehouse Company in the sum of $2,558.88.

In April, 1912, Calvert purchased a lot in Carrollton, Ky., for $216.00, had the deed therefor made to himself and wife, and erected a dwelling house on the lot, which he and his wife were occupying as a homestead at the time this action was brought, in April 1916, wherein

plaintiff, after setting up its account against E. T. Calvert & Co. alleged that, at the time the lot was conveyed to Calvert and his wife, Calvert & Co. were indebted to it in the sum of about $5,000.00; that the conveyance of any part of the title to the property to the wife was a fraud upon the rights of plaintiff, done by E. T. Calvert for the purpose of cheating, hindering, and delaying plaintiff in the collection of its claim. Plaintiff procured a general order of attachment, had it levied upon the house and lot, and prayed judgment for the balance of $2,558.88, with interest, due it by the firm of E. T. Calvert & Company; that the conveyance to Mrs. Calvert be set aside and the house and lot be subjected to the payment of plaintiff's demand. Defendants admitted the indebtedness of E. T. Calvert & Co. as alleged by plaintiff, with the exception of one item of $730.40, which they denied was advanced to the firm by plaintiff; denied the alleged fraud; averred that the house and lot in Carrollton was purchased with the proceeds of a house and lot in Owen county, which they used, occupied and claimed as a homestead from 1876 until shortly before the purchase of the lot in Carrollton by the defendant; that the house was erected upon the lot in Carrollton and payment therefor made out of the balance of the proceeds received from the sale of their Owen county homestead, supplemented by $600.00 furnished by Mrs. Calvert, which was her individual and separate property; and that the house and lot in Carrollton was exempt from the payment of plaintiff's demand. Defendant, E. T. Calvert, set up a counter-claim for $3,000.00 damages for alleged negligence upon the part of plaintiff in storing and caring for the tobacco shipped to it by the firm, and for plaintiff's failure to sell the tobacco as it was received.

Upon the trial, a judgment was entered in favor of the plaintiff against E. T. Calvert for the amount claimed in the petition; also adjudging that defendants were entitled to a homestead of $1,000.00 in the house and lot sought to be subjected; that the balance of the funds used in purchasing the lot and erecting the house in excess of $1,000.00, was the individual property of Mrs. Calvert; that the conveyance of the property to the Calverts jointly was not fraudulent; that the property was not subject to plaintiff's claim; and that the defendant's counter-claim be dismissed.

Plaintiffs are appealing from so much of the judgment as exempted defendants' house and lot from the payment of its claim; while counsel for defendants, in their brief but not otherwise, attempt a cross-appeal from so much of the judgment as dismissed the counter-claim.

1. Section 755, Civil Code, provides, in part, that: "The appellee may obtain a cross-appeal, at any time before trial, by an entry on the records of the Court of Appeals." A cross-appeal is granted to an appellee under this provision of the code as a matter of right, upon motion; but, to procure it, it is necessary that a motion be made and an order granting it be entered upon the records of this court before final submission. This, appellee in this case failed to do, and we can not, therefore review the court's judgment dismissing appellee's counter-claim, as we are asked to do by counsel in brief.

2. The proof is uncontradicted that in 1876 the defendants, E. T. Calvert and his wife, Susie Calvert, were married and went to housekeeping in a house, which he erected on his mother's land at Monterey, in Owen county; that his mother died in 1888 and, in the division of her estate, he was allotted 100 acres of land, upon a part of which this house was situated; that the defendants, with their family, resided upon this land and occupied the house thereon as a homestead continuously from 1876 until 1900, when the defendant. E. T. Calvert, accepted employment in Carrollton, where he has since resided except for about four months in 1906; that, with this exception, from the time he left the former place and went to Carrollton until he purchased the lot and erected the house thereon, he rented out his home in Owen county and lived in rented property in Carrollton; that when he sold his Owen county home there was left, after the payment of his debts, about $1,000.00; that with $216.00 of this $1,000.00 he purchased the lot in Carrollton; and that, with the remainder of this $1,000.00 and some money, claimed by defendants to amount to $600.00 that belonged to and was furnished by his wife, they erected on the lot a dwelling house, which they have since occupied as a homestead.

Appellees claim, and testify, that, during the period between the time they left their Owen county home and their purchase of a home in Carrollton, they were claiming the former as a homestead with a fixed intention of

returning thereto; that, in 1906, while the husband was employed away from Carrollton as a clerk on a Kentucky river steamboat, they returned and occupied the Owen county home as a homestead; that, again finding employment in Carrollton, he and his wife rented and occupied rooms in Carrollton with the intention of remaining in Carrollton a short time and then returning to their old home; and that, not until they sold their home in Owen county and purchased the lot in Carrollton, did they give up the intention of returning to their home in Monterey and establish a new home in Carrollton, or have any fixed or permanent home in Carrollton, or elsewhere except at Monterey. As contradictory of this evidence of a fixed intention to return, counsel for appellant rely upon admissions of defendant, E. T. Calvert, that, during the time he had been in Carrollton, he had voted there a few times and did not know that he had voted in Owen county within the five years next preceding the sale of his property there; and that, during the time he had been in Carrollton, their children, while of school age, had attended the Carrollton public schools without the payment of tuition.

For appellant, it is insisted that the testimony fails to establish an actual, fixed and present intention upon the part of defendants, during the twelve years they were away from the Owen county property, to return to and occupy it as a homestead, but, at most, it does no more than to show that they had an indefinite, secret idea that some time they might want to return to it; and that the rule adopted in this state is as stated in Mattingly v. Berry, 94 Ky. 544:

"It is well settled by this court, that in order for a person to claim his homestead as against the rights of creditors, after abandoning the same, the abondonment must be temporary, with a fixed purpose at the time of abandonment to return to said property and occupy it as a homestead."

See also Carter, Fisher & Co. v. Goodman, 11 Bush, 228; Burch v. Atchinson, 82 Ky. 585; Curran v. Culf, Admr., 13 Ky. L. R. 84; Nethercutt v. Herron, 10 Ky. L. R. 247.

We do not question either the accuracy of this statement of the rule or that the judgment in each of those cases was, upon the facts, correct. But, as has been often

said, it is impossible to lay down an absolute rule as to the amount or character of evidence that will be sufficient to establish the fact of abandonment and a waiver of the homestead right, which depends upon the intention and purpose of the claimant at the time of leaving and during his absence. Every case must be determined upon the facts established in evidence; and the potent reason in every instance for subjecting the home in which a debtor has not lived for a long time, rather than exempting it upon a claimed intention of returning thereto, is that it would be a deception and fraud upon the creditor who had extended credit upon the faith of the ownership of the property in which the debtor did not reside.

We have frequently held that the fact the claimant of a homestead voted in a precinct other than that in which the homestead is located is not conclusive evidence of abandonment of the homestead, but is merely a circumstance to be considered in connection with other proof in determining the question of abandonment. Farmers & Traders Bank v. Childers, 150 Ky. 719, and authorities there cited; and likewise with reference to the duration of the absence from the homestead, American National Bank v. Matthews, 124 S. W. 811, and cases cited therein.

In Brandenburg v. Rose, 110 S. W. 376, and in many other cases, we have held that where the owner of a homestead sells it and with the proceeds buys another, the right to a homestead in the second tract is good against intervening creditors, which does not apply, of course, if in fact the first homestead has been abandoned before the purchase of the second; but the fact that the old home was sold and the proceeds invested in a new home in which defendant was actually living at the time it is attempted to subject it, is a circumstance to be considered in determining the question of abandonment.

Upon the proof here, we do not think it can. be presumed that plaintiff extended credit to the firm, of which E. T. Calvert was a member, upon the faith of the ownership of the Owen county land, because it was sold by Calvert for the purpose of reinvestment in a new home before, or within a short time after, plaintiff began making advancements to the firm of Calvert & Company and, during the time the advancements were being made, the proceeds of the sale were invested in the house and lot in Carrollton, which defendants had been occupying as

a homestead for nearly, or quite, two years before it was ascertained that there would be any indebtedness to plaintiff beyond that which would be satisfied by the firm's tobacco, which plaintiff had in its possession and was holding for sale, although at the time the lot in Carrollton was purchased, but not when the Owen county home was sold, about $5,000.00 had been advanced by plaintiff to the firm, upon an undertaking which was, in effect, a joint enterprise of a speculative nature, in which the only credit extended to defendant was for losses, if any, that might result at the end of the transaction.

Upon the facts of this particular case, we do not think the court erred in holding that the $1,000.00 that E. T. Calvert had invested in this property was exempt as a homestead, or that the remaining $600.00 invested therein was furnished by Mrs. Calvert out of her separate estate and was not liable for plaintiff's debt.

Wherefore, the judgment is affirmed.