JUDGE PRYOR
delivered the opinion oe the court.
This is an' appeal in the name of the Daviess County Court against A. G. Howard and others, tax-payers of the county of Daviess. The Owensboro & Russellville Railroad Company was chartered by an act of the legislature passed in the year 1867. By the 19th section of the act of incorporation it was provided “that the county courts of Daviess, Ohio, Muhlenberg, and Logan counties shall have power, and are hereby authorized, to subscribe to the capital stock of the company in such number of shares as may be determined by said county courts, respectively, and to levy upon the tax-payers of- such counties, respectively, such taxes as may be necessary to pay the stock subscribed; and the said county courts may, if they shall deem it prudent, issue the bonds of said counties, respect *105 ively, for the amount of stock subscribed, or any part thereof; said bonds to be in such sums, and payable at such times, as said county courts may determine upon. But before such stock shall be subscribed by the county courts, the said county courts shall submit to the voters of said counties the proposition to subscribe stock, and the amount thereof (to be suggested and fixed by the commissioners named herein), at an election to be held after due notice,” etc. The commissioners for Daviess County, in accordance with this provision of the charter, suggested to the county court a submission to the voters of the question, “Will the voters instruct the county court to subscribe ten thousand shares to the capital stock of the company ?” The vote was regularly and properly taken, and, a majority of the voters favoring the subscription, the sum of $250,000 was subscribed and taken by the county as stock in the corporation, the shares being $25 each.
At the July term of the Daviess County Court, held in the year 1868, it was ordered that Geo. W. Triplett, the county judge, W. B. Tyler, and E. C. Berry be and are hereby appointed a committee, on behalf of the county court of Daviess County, “to have bonds executed and prepared of a sufficient amount to satisfy and pay off the subscription, on the part of the county of Daviess, to the Owensboro & Russellville Rail- ■ road Company; that said bonds be executed and made payable as follows, viz: $50,000 five years from date, $50,000 ten years from date, $75,000 fifteen years from date, $75,000 twenty years from date; the bonds bearing interest at six per cent per annum, payable semi-annually; for the payment of which coupons were attached,” etc. The committeé, or a majority, were authorized by this order “to sell or dispose of the bonds either to the Owensboro & Russellville Railroad Company, or to individuals, or to other corporations, on such terms as said committee may deem best and most advisable to the interests of the county of Daviess, in paying the subscription,” etc.
*106 At a subsequent term of the court, held in the same month— July, 1868 — it was recited “that as the court had ordered the committee to have bonds prepared and executed, in a sufficient amount to satisfy and pay off the subscription, and to sell and dispose of said bonds, either to individuals or corporations, it is now ordered that said order he so amended as to authorize said committee to appoint agents to sell said bonds.”
Under these orders of the county court the bonds of the county were executed, not only for the $250,000 and its interest, but for the additional sum of $67,350, making the whole amount of interest-bearing bonds, with coupons attached, $317,350. These bonds, as is alleged in the petition, were sold to the railroad company, in discharge of the county subscription, and many of them are now in the hands of parties unknown to the plaintiffs in the action. A tax has been levied on the tax-payers of the county to pay the bonds as they matured, and the accruing interest on the whole amount. The plaintiffs, the tax-payers of the county, instituted the present action, in which they seek to enjoin the county court from collecting either the principal or interest upon the bonds issued in excess of the $250,000, insisting that the county court, as the agent of the tax-payer, exceeded its authority in making sale of any of the bonds, and that the bonds, other than those directed to be issued by the order of the county court, made in July, 1868, are void. The county court, or its committee, acted upon the idea that it was invested with the power to execute and sell at a discount as many bonds as were necessary to raise the money to pay the subscription of $250,000. This is the sole question presented by the record.
It is alleged in the petition that the railroad company, the Planters Bank, and others are the holders of some of these bonds, and as they were made defendants to the action, and the court refused to pass upon the question as to the liability of the county to them, the appellees, the tax-payers, have *107 prayed a cross-appeal. This cross-appeal can not be. considered, as the parties against whom it is prayed, or who are to be affected by it, are not before the court. The court below has enjoined the county court from proceeding to collect the interest on the bonds in excess of the $250,000. The defendants, if they hold any such bonds, are not complaining, as they have failed to prosecute any appeal. The appeal is here by the Daviess County Court against the tax-payers, that tribunal insisting upon its right to levy the tax to pay the interest on all the bonds issued and sold to satisfy the county subscription. The controversy is between the agent and principal.
The county court, by virtue of the 19th section of the act incorporating the railroad company, was invested with the power to pay the county subscription by levying a tax upon the property of the citizen, or by issuing county bonds in whole or in part discharge of the indebtedness. The power to issue bonds was limited in amount to the sum subscribed by the county to the capital stock, and the county court, looking to the extent of the power with which it was clothed by the act in question, designated the number and amount of bonds to be issued by an order of that court made in July, 1868. This order directed the execution of bonds for $50,000 payable in five years, a like amount payable in ten years, $75,000 payable in fifteen years, and a like sum payable in twenty years, with interest coupons attached, payable semiannually. This covered the entire subscription, and when issued it was proper for the county court to deliver them over to the railroad company in payment of the subscription made by the county. These were all interest-bearing bonds, and when executed by the county for the amount of stock subscribed, the county court acted within the scope of the authority conferred by the act, and exhausted all the power that tribunal had to discharge the indebtedness in that manner.
The act expressly authorized the county court to issue bonds *108 for the amount of stoclc subscribed; but we find no power conferred by the charter upon the county court to issue bonds for $317,350. It was a cash subscription, and the interest-bearing bonds are to be regarded as equivalent to a cash payment, and if the railroad company declined to accept them in discharge of the subscription, it was the duty of the county court to raise the money by taxation. That tribunal had no right, either by reason of its jurisdiction over the subject-matter, or by the letter or spirit of section 19 of the railroad charter, to issue bonds for an unlimited amount, and then- place them upon the market at a discount, in order to satisfy the debt to the railroad company. The power to issue the bonds does not imply the power to sell. No general power is conferred upon county courts to issue such bonds or to subscribe stock in behalf of the county, in which the tribunal exists, to railroad companies or other corporations, and when this extraordinary power is conferred by legislative enactment, by which a bare majority of the votes cast may impose upon a large minority of the citizens or tax-payers a taxation by which they are to be burdened for years, courts should not be inclined to disregard, although it may be done by a liberal construction, the conditions and restrictions placed by the legislature upon such an exercise of power.
The powers conferred by such legislation should be strictly pursued, and the fact that the county has incurred the liability can not be held to justify any action the county court may see proper to take, in order to secure its payment. In this case the voter agreed to be taxed in the sum of $250,000, the debt to be discharged by a direct tax or by the issuing of bonds for that amount, bearing interest. He has agreed to pay that sum, and to say that because he voted to pay that amount, he is liable to pay the additional sum of $67,350 is not warranted by the letter or spirit of the law conferring the power on the county court to tax him, or consonant with natural justice. If the *109 legislature had been asked to vest in the county- court of Daviess the power to raise by taxation the sum of $317,350, -the whole sum bearing interest, to pay this debt of $250,000, would such a proposition have received serious consideration ? •Or if such authority had been expressly given, is it to be presumed that the tax-payer would have been so regardless of his ■own interest as to east his vote in favor of the measure ?
It was never contemplated that these bonds should be sold .at a discount, either by the county court or by the railroad company, so as to make the county responsible for the deficit. The power to sell the bonds to raise the money to pay for the ■■stock was not given byr the act. The bonds bearing interest were worth as much as the stock subscribed, and were so regarded, no doubt, by the legislature, when enacting the law. The ■county court, in fact, never authorized the issuing of bonds for a greater amount than $250,000, and if that tribunal had the right to exceed the power conferred upon it, still it has not attempted to exercise this right except by a levy of the .tax upon the citizens to pay the interest. It is maintained by the county court that because it has once levied the tax, or ■continued to do so, since the bonds were issued to pay the interest, that this amounts to a ratification of the action of the county court by the tax-payers of the county. ^
That the county court obtained all the power that could be properly exercised with reference to this question of taxation from the 19th section of the act incorporating the railroad ■company is too plain for controversy. The county court, in issuing the bonds in excess of the $250,000, or permitting it -to be done by the committee appointed by the court, transcended the authority given by the legislature, and no subsequent act of the county court or of the tax-payers can make * valid the exercise of a power that had no legal sanction.
The corporation knew the extent of the power given the ■county court by the act incorporating the company. It *110 received the bonds, and is not complaining of the action of the court below. The action of the county court in collecting the tax upon the over issue of bonds, or the interest, was clearly illegal. They were nullities in the hands of either the county court or the corporation, and the payment by the unwilling tax-payer can not justify this unwarranted exercise of power.
The voters of the county had no right to assume the burden except in the manner provided by the act. They could not ratify an act that neither the county court or themselves had the power to perform. If the principal could not exercise the right it is difficult to perceive how. his sanctioning its exercise by an agent could make it legal. In making the over issue the county court or its committee acted beyond the scope of its agency, and outside of the power given by the legislature. The only way in which the people could ratify it would be by a vote under a legislative enactment.
It is argued by counsel for the appellant, the county court, that there is no reason to discriminate between the holders of these bonds on account of the date of the purchase, and that there is no means of determining which of them are valid and which not. This question can not well arise between the county court and the tax-payer, and as there has been an excessive issue,.the county court can not complain of the injunction. It does not appear who has possession of the bonds. It is alleged that they were delivered or sold to the corporation, the railroad company. It was made a party defendant, and does not ask to have any equitable distribution of the fund, or to disclose even to whom it has transferred these bonds. The judgment below, enjoining the county court from proceeding to collect the over issue of bonds, or the in-' terest, by levying a tax upon the property of the appellant, is affirmed, and the cross-appeal of the appellees dismissed without prejudice.
As to the appeal of the tax-payers from the refusal of the *111 court below to modify the judgment, this must also be dismissed without prejudice. The court had no power to correct its judgment at a subsequent term, unless for a clerical misprision, and, as we understand the character of the judgment rendered, it gives to the appellees all they ask; that is, it enjoins the collection of the bonds and interest exceeding the $250,000. (Gould v. Sterling, 23 New York; City of Atchison v. Butcher, 3 Kansas; Marsh v. Fulton County, 10 Wallace; Daniel on Negotiable Instruments, vol. 2, pp. 463, 464.)