BABCOCK ET AL., APPELLANTS, *v.* GREGG, RESPONDENT.

(No. 3,953.)

(Submitted September 20, 1918.  Decided November 25, 1918.)

[178 Pac. 284.]

*Real  Property—Ditches—Easements—License — Prescription—*
*Injunction—Pleading — Surplusage — New  Trial—Appeal —*
*Review  of  Evidence.*

Real Property—Easement—Ditches—Prescription—Nature of Title.
   1.  A right acquired by prescription to maintain a ditch over prop-
erty of another is no more subject to variation than one created by
deed, and therefore does not carry with it the right to enlarge the
ditch, change its course materially, or make a new ditch over the land.
Same—Easement—Abandonment.
   2.  An easement for a right of way for an irrigating ditch may be
lost by abandonment.
Same—Easement—Nature of Right Acquired.
   3.  An easement implies a permanent interest in real estate, and, generally
speaking, can be created only by an instrument in writing or by pre-
scription.
Same—License—Definition.
   4.  A license does not imply an interest in real estate, is a mere per-
sonal privilege which, so long as it is executory, may be revoked at
the will of the licensor, and may rest in parol.
Same—Easements—Exchange by Parol Agreement—Nature of Transaction.
   5.  Where an easement for a ditch used to irrigate a large tract of
land, after acquisition by prescription over town lots was abandoned
by parol agreement of the parties for one over the same property but
more advantageous to the lot owner, which agreement was fully exe-
cuted, the transaction *held* to have been an exchange of one easement
for the other, and not to have resulted in a license, revocable at the
will of the licensor.
Same — Ditches—Interference—Injunction—Title—Complaint—Surplusage.
   6.  In a suit for an injunction to restrain interference with an irri-
gating ditch and to compel removal of an obstruction placed therein
by defendant, plaintiff need not plead the character of title by which
he holds the right of way for his ditch; where he does so, the allega-
tion may be treated as surplusage.
   [As to right of one land owner to accelerate or diminish flow of
water to or from the lands of another, see note in 85 Am. St. Rep. 707.]
Same—Pleading—Surplusage—Appeal—Theory of Case.
   7.  Plaintiff's allegation that he acquired title to a ditch by prescrip-
tion having been surplusage, he was not estopped, on the ground of
inconsistency, to assert on appeal that he obtained title by exchange
of one ditch for another.
Equity—Findings—New Trial—Review of Evidence.
   8.  The question of the sufficiency of the evidence to support the find-
ings of the court in a suit for an injunction may be raised on appeal
from the order denying a new trial.

*Appeal from District Court, Musselshell County; Chas. L. Crum, Judge.*

ACTION by Ida Babcock and others against J. B. Gregg. From a judgment for plaintiff and an order denying them a new trial, plaintiffs appeal. Reversed and remanded.

*Mr. E. K. Cheadle,* for Appellants, submitted a brief, and argued the cause orally.

*Messrs. Collins, Campbell & Wood,* for Respondent, submitted a brief.

It is settled law that in 1910, and immediately prior to the ditch change, the appellants, in so far as lots 1 and 2, block 4, Ryegate, are concerned, had title only to the portions thereof actually then traversed by their ditch. (*State* v. *Auchard,* 22 Mont. 14, 55 Pac. 361; *Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565.) It is likewise settled law that an easement which has vested in the dominant estate cannot be changed after it has been established by prescription or otherwise, except by the creation of a new easement. (*Vestal* v. *Young,* 147 Cal. 715, 721, 82 Pac. 381, 384; *Kern Island Irr. Co.* v. *City of Bakersfield,* 151 Cal. 403, 90 Pac. 1052; 9 R. C. L. 793.) "Where an easement is acquired by prescription, the extent of the right is fixed and determined by the user in which it originated, and cannot be extended except by a user which has been acquiesced in for the requisite length of time, or where additional rights have been acquired by some other title." (14 Cyc. 1200, 1201; Kinney on Irrigation and Water Rights, 2d ed., pp. 1511, 1512, 1754, 1755; Angell on Watercourses, 7th ed., par. 224.)

The right acquired by the appellants was nothing more than a parol license, which became revocable at will. (*Great Falls Water Works Co.* v. *Great Northern Ry. Co.,* 21 Mont. 487, 54 Pac. 963; *Archer* v. *Chicago, M. & St. P. Ry. Co.,* 41 Mont. 56, 137 Am. St. Rep. 692, 108 Pac. 571; *Lewis* v. *Patton,* 42 Mont. 528, 113 Pac. 745.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Plaintiffs own approximately 1,500 acres of farm lands in Musselshell county, have appropriations of water for the irrigation of the same and a main ditch and laterals for distribution. In May, 1910, they had acquired by prescription a right of way for the main ditch over a portion of land which was platted as the town site of Ryegate. The ditch crossed diagonally lots 1 and 2 in block 4, which lots, so far as material here, are owned by the defendant. This suit was instituted to secure an injunction restraining defendant from interfering with the ditch and to compel him to remove an obstruction from it.

The complaint charges that in July, 1915, defendant constructed a foundation wall for a building, projecting into the ditch at point C on the diagram, thereby obstructing the flow

of water to plaintiff's land. The answer consists of a general denial of all the material allegations of the complaint, and an equitable counterclaim in the nature of a complaint to quiet title. The trial of the cause resulted in a judgment for defendant, and plaintiffs appealed from the judgment and from an order denying them a new trial.

The record discloses that the Milwaukee Land Company was the immediate predecessor of plaintiffs; that it owned the town site; that about 1909 it sold lots 1 and 2 to Mrs. Gregg and that she in turn sold them to defendant J. B. Gregg about 1913. In 1910 the location of a portion of the main ditch was changed so that it pursued the course illustrated by the diagram, instead of crossing lots 1 and 2 diagonally as theretofore.

The trial court found:

(2) That in May, 1910, plaintiffs had a right of way for their main ditch diagonally across lots 1 and 2.

(3) That thereafter in the same year the old ditch from A to B was filled; the course of the ditch changed materially and the right of way for the portion filled, was abandoned.

(6) "That no grant of easement for a right of way of any estate or interest whatsoever has ever been made to the plaintiffs herein, or to any of their predecessors in interest, of any portion of either lot 1 or lot 2 of block 4 of the original town site of Ryegate, either in writing or by parol, by the defendant or any of his predecessors in interest."

The other findings are not material to a determination of these appeals.

The court concluded that plaintiffs have no right to maintain their ditch over any portion of lot 1 or lot 2, and this conclusion follows if findings 3 and 6 are supported by the evidence.

It is elementary that plaintiffs' right to maintain their ditch [1] diagonally across lots 1 and 2, acquired as it was by prescription, did not carry with it the right to enlarge the ditch, change its course materially, or make a new ditch over defendant's property, for a right by prescription is no more subject to variation than one created by deed. (9 R. C. L. 793.) In this

instance the extent of the servitude was determined by the nature of the enjoyment by which it was acquired. (Sec. 4512, Rev. Codes.)

It is also elementary that an easement may be lost by aban-[2] donment; and if it is a fact that the portion of the old ditch from A to B was abandoned and a right of way for the new ditch was not acquired, plaintiffs are remediless so far as this action is concerned. The determination of the controversy, therefore, depends upon the answer to the inquiry: Does the evidence support findings 3 and 6?

It may be conceded that there is ample evidence to warrant the finding that the right of way from A to B was abandoned in the sense that the old ditch between those points was completely filled; that it was not thereafter used, and that no complaint is made of the action of the defendant in filling it. There is no specific finding that the new ditch was constructed upon lot 2, but, since finding 6 would be meaningless upon any other theory, we assume that it was meant by finding No. 5 to declare that it was constructed upon lot 2, to some extent at least.

The court failed to find upon the material question: Under what arrangement or agreement, if any, was the change made? The answer to this will determine whether the court erred in its finding No. 6.

The evidence seems to point conclusively to the fact that though Mrs. Gregg was nominally the owner of lots 1 and 2 when the change was effected, the defendant J. B. Gregg was actually the owner, but this is not very material. The old ditch was filled and the new one constructed over a portion of lot 2 under an agreement between defendant and the Milwaukee Land Company—the then owner of the old ditch and right of way. The change was made at the instance and request of defendant in order to render available for building purposes a larger area of lots 1 and 2. We think it is established beyond controversy, also, that defendant was the only one who was or could be benefited by the change.

The record does not disclose the particular theory upon which the court proceeded in making its deductions from the facts, but it must have adopted one or the other of these two theories: First: That the defendant merely granted a license to construct the new ditch over lot 2; that the license was revocable at will, and that by projecting the building foundation into the ditch, the license was revoked; or, second: That if defendant agreed to grant the right of way for the new ditch in consideration of the abandonment of the old one, such agreement resting, as it did, in parol, was void under the statute of frauds.

A text-writer has well said: "An easement is distinguished from a license, though it is often difficult to make out whether a particular case is the one or the other." (Jones on Ease-[3, 4] ments, sec. 65.) An easement implies an interest in real estate; a license does not. Permanency is a characteristic of an easement, while a license, at least so long as it is executory, is a mere personal privilege, revocable at the will of the licensor. Speaking generally, an easement can be created only by an instrument in writing or by prescription (*Great Falls W. W. Co.* v. *Great Northern Ry. Co.*, 21 Mont. 487, 54 Pac. 963), while a license may rest in parol.

In this instance, the intention of the parties in making the [5] change is the determining factor, and that intention must be ascertained from their acts and declarations viewed in the light of the surrounding circumstances. It is apparent that when the change was in contemplation, defendant appreciated the character of servitude imposed upon lots 1 and 2 by the right of way for the old ditch. The title to that easement, though acquired by prescription, was as effective as though it had been evidenced by deed. (Sec. 4571, Rev. Codes.) The abandonment of the old way without acquiring a new one meant the abandonment of the entire irrigation system below lots 1 and 2. In view of these considerations, defendant agreed that the ditch should be removed from its diagonal course across those lots to the new location along the outer edge of lot 2—a location much more advantageous to him, but not advantageous

to anyone else. Under these circumstances it would be unconscionable to hold, in the absence of clear and convincing proof, that the parties intended that the valuable right represented by the old easement, should be surrendered altogether, and that the right of way for the new ditch over lot 2 might be destroyed at any time at the will of defendant.

The evidence does not justify finding 6, if made upon the theory that a revocable license only was contemplated. On the contrary, it indicates to us, clearly, that the transaction was intended to be, and in fact was, an exchange of one easement for the other—a grant of the right of way for the new ditch over lot 2, in consideration of the abandonment of the old one, and since the agreement was fully executed, the objection that it rested in parol is not available.

Section 5017, Revised Codes, was intended to prevent frauds, not to encourage their perpetration. In *Lewis* v. *Patton*, 42 Mont. 528, 113 Pac. 745, this court gave recognition to the principle now applied, and said: "It is a well-settled rule in equity that where A agrees orally to convey a right of way to B, and there is a sufficient consideration for such agreement, and, acting upon it, B enters into possession of the right of way and makes improvements to his financial detriment, equity will protect the right."

Finding No. 6 is not sustained by the evidence upon any theory, and without that finding there is nothing to support the judgment.

It was unnecessary to a statement of their cause of action for [6, 7] plaintiffs to disclose the character of title by which they held the right of way for their ditch, and the allegation of their complaint that they had acquired title by prescription may be treated as surplusage, and their contention now that they secured the new right of way by an exchange of the old one for it is not inconsistent with their pleading.

Counsel for respondent err in assuming that the question of [8] the sufficiency of the evidence cannot be raised upon ap-

peal from the order denying a new trial.  (*Conrow* v. *Huffine,* 48 Mont. 437, 138 Pac. 1094.)

Finding No. 6 is not attacked upon the ground that it is defective, and the provisions of sections 6766, 6767 and 6768 were not affected in the least by Chapter 135, Laws 1915.

The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. Chief Justice Brantly concurs.

Mr. Justice Pigott did not hear the argument and takes no part in the foregoing decision.

Motion for rehearing denied December 30, 1918.