## Commonwealth ex rel. Howard, Commissioner of Revenue, v. Imperial Oil Co. et al.

May 13, 1947.

Sidney B. Neal, Judge.

Eldon S. Dummit, Attorney General, Roy W. House, Assistant Attorney General, and Maurine Sharp for appellant.

Wilson and Wilson for appellees.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

Commonwealth of Kentucky, the appellant, sought to recover $1597.16 in tax penalties and tax interest from Imperial Oil Company and others, the appellees, under statutory provisions. The trial court having overruled appellant's general demurrer to appellees' answer, and

this action then having been submitted on the pleadings, a judgment was thereupon rendered dismissing appellant's petition. This appeal is now prosecuted by appellant seeking reversal of that judgment.

Appellant's present contention is that the judgment should be reversed because the trial court committed prejudicial error in overruling its general demurrer to appellees' answer.

Appellees were gasoline dealers and as such they were required by law to pay taxes at the rate of 5 cents per gallon on all gasoline received by them in course of trade. The law requires that these taxes must be paid by the last day of each current month upon the entire volume received by dealers during the month immediately preceding. The law further provides a penalty of 20 per cent of the tax, plus 6 per cent interest on the tax during the delinquent period, plus an additional penalty of 20 per cent of the tax if collection is made by court proceedings, all in the event of nonpayment during the grace period of one month following the month of accrual. See KRS 138.210 et seq.

The answer of appellees admitted that they had not paid these taxes when due; that they had been delinquent in making such payments during each of two months of the summer of 1942; that they had a total of 15 to 20 employees during the period in question but had experienced a rapid "turnover" in personnel due to war conditions; that their bookkeeper, who usually made out their gasoline tax reports, had been inducted into the armed forces of this country only a few days before these taxes became delinquent and had thus failed to make appellees' gasoline tax report and to present to appellees the subject of this tax payment before his departure; that appellees were in such confusion and chaos under wartime conditions that they did not personally attend to these tax payments nor have them attended to by their other employees.

Appellant tested the legal strength of the substance, as above set out, of appellees' answer through a general demurrer, which the trial court overruled.

Appellees contend that the gasoline tax law penalties are too harsh, and accordingly they are now vir-

tually asking this court to waive or excuse such penalties because of their very harshness or because of the wartime situation or because of both the harshness and war situation. But appellees seem to forget that courts neither make nor waive laws. They only interpret and apply them. Some laws really do work in harsh fashion. For instance, the man who steals a loaf of bread to feed his hungry children may be sent to jail 12 months. Again, the man who steals chickens valued at 2 dollars may be sent to the penitentiary 5 years. Yet courts do not make such laws. The people make them and then swear their judges to apply them.

If gasoline tax law penalties were harsh for appellees, they were likewise harsh for hundreds of other dealers in the state. If wartime conditions excused appellees, these same conditions surely could have excused all other dealers in the state. And if all the other dealers in the state had to pay promptly because the law's sword of Damocles hung precariously over their heads, then this court would be producing a penalty on all other dealers the moment it produced a pardon for appellees. All gasoline dealers faced war conditions together. Theoretically, all the other dealers may have worked overtime and hired extra help and spent extra money in order to make these gasoline tax reports punctually. If they were doing all of that to observe a law that could be nullified by the courts before breakfast, then they might just as well have spent their money on the Irish Sweepstakes.

Neither appellant nor appellees have cited us a legal authority exactly in point on this question. We assume there is none. And the reason there is none is because the statute itself, explicit on its very face, has always governed this situation without any resort to the courts.

Our Kentucky Constitution, Sec. 1, says: "All men are * * * equal," etc. But if this court should now grant appellees immunity from the previous operation of the provisions of the gasoline tax law, while the responsibilities of these same provisions of law have been consistently carried by all others of the same class, this would produce a definite inequality between appellees, on the one hand, and all their classmates, on the other hand. We possess no power to grant immunity to ap-

708

pellees. They have cited us no authority clothing us with the right to suspend the operation of any part of the law in question.

Because appellees' answer stated no legal defense, appellant's general demurrer thereto should have been sustained by the trial court. It was prejudicial error to overrule appellant's general demurrer.

Since the appellees did not take any cross-appeal as provided by Sec. 755, Ky. Civil Code of Practice, we have not considered nor discussed the asserted error, which they aver was committed by the trial court in overruling their own general demurrer to appellant's petition herein. See Vanhoose v. Wheeler, 141 Ky. 746, 133 S. W. 779.

Wherefore, for the reason hereinabove indicated, the judgment is reversed for proceedings consistent herewith.